UNITED STATES of America, Plaintiff,

v.

Marcus Lamour HARVEY, Defendant.

No. 90–CR–80957–DT.

United States District Court, E.D. Michigan, S.D.

April 8, 1992.

Nancy Abraham, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Randall C. Roberts, Ann Arbor, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This matter is before the Court on defendant-Marcus Harvey's Fed.R.Crim.P. 12(b)(3) motion to suppress the admission of physical evidence and statements made by the defendant. On March 3, 1992, the Court held an evidentiary hearing. At the conclusion of the hearing, the Court granted the parties leave to file supplemental memoranda. The government filed its supplemental memorandum on March 12, 1992; defendant on March 23, 1992. For all of the reasons stated below, defendant's motion to suppress is denied.

### I.

At the suppression hearing, two witnesses testified: Grand Blanc Township, Michigan Officer David Collardey and Michigan State Trooper Phillip Cook. During the evidentiary hearing, this Court had an opportunity to consider, and did consider, each witness' ability and opportunity to observe the facts and events to which he testified; each witness' memory and manner while testifying; each witness' interest, bias or prejudice; and the reasonableness of the witness' testimony considered in light of all the evidence admitted. Based on the aforementioned considerations, this Court finds no reason to question the credibility, veracity, and believability of Officer Collardey's and Officer Cook's testimony.[1]

On May 22, 1990, Grand Blanc Township, Michigan Officer David Collardey parked his patrol car on the median of Interstate 475, in Genessee County, Michigan, where he used a radar detection device to spot speeding automobiles in the northbound lanes. While parked on the median, Collardey observed defendant's vehicle travelling 68 miles per hour in a 65 m.p.h. zone. Defendant's vehicle also very conspicuously lacked most of a front end assembly. Specifically, as made clear by photos of the car admitted as government exhibits 1 and 2, the auto lacked a front bumper, two of the four front headlamps, parking lights, and at least half of its front grill. The front end was also marked by numerous flailing wires and what appears to be electrical tape. The right front quarter panel and the sheet metal above what was left of

---

**1.** Despite defendant's allegations, Officer Cook's testimony was consistent with that of Officer Collardey.

the front grill were noticeably and severely dented.

As defendant's vehicle approached officer Collardey, officer Collardey took note of the obvious equipment and traffic violations and decided to stop defendant's vehicle. At the side of the road, Collardey approached the vehicle from the driver's side. Sean Hodges was driving the vehicle; defendant was seated in the front passenger seat, and Derrick Price was seated in the rear passenger seat. Michigan State Trooper Phillip Cook stopped to assist Officer Collardey.[2]

Defendant and Price did not possess identification, and none of the three had a valid driver's license. Upon Officer Collardey's request, Hodges, the driver, produced a vehicle registration form. Officer Collardey asked Hodges to identify the owner of the car. Hodges responded by saying he owned the car, but quickly recanted and said his aunt owned the car. The vehicle registration indicated that defendant owned the automobile, and subsequently defendant identified himself as the owner of the car.

The driver, Hodges, was arrested for operating a motor vehicle on a suspended driver's license. As an incident to the arrest, Officer Collardey patted down Hodges and discovered a rock of cocaine base (also referred to as "crack"). Officer Collardey decided to impound defendant's car because there was no one present to legally operate the automobile.

Officer Collardey decided to conduct an inventory search of the impounded vehicle. Neither he nor the occupants could locate a trunk key, so Officer Collardey removed the back seat to inventory the contents of the trunk. Officer Collardey located 78 individually wrapped rocks of crack cocaine, six live .357 magnum Winchester revolver cartridges, and a bullet proof vest. He then decided to conduct a more thorough search of the trunk by forcing open the trunk lid. The more extensive search of the trunk uncovered a Smith & Wesson

.357 revolver. Defendant was later read his *Miranda* rights and made an incriminating statement.

Defendant argues that police officers conducted a pretextual stop of his automobile and that in the course of the allegedly unconstitutional stop, discovered the seized items. Defendant argues that the seized items must be suppressed from admission because they were seized during an improper stop and search. Defendant also argues that the statement should be suppressed as the fruit of an illegal stop and search.

The government argues that the police made a valid traffic stop and were forced by circumstances brought about by defendant's failure to have a licensed driver in his vehicle to impound the vehicle and conduct an inventory of contents in accordance with established procedures. The government further contends that defendant provided a statement after proper *Miranda* warnings were given and after an interview was conducted.

## II.

### A.

 The first issue before the Court is whether Officer Collardey lawfully stopped defendant's vehicle. A law enforcement officer can conduct a brief investigatory stop of a vehicle if the stop is supported by articulable facts sufficient to create a reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Court must employ an objective standard in determining whether the requisite degree of suspicion existed at the time of the challenged stop. *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). The Court's determination must turn on an objective assessment of the officer's actions, not upon his actual state of mind. *Maryland v. Macon*, 472 U.S. 463, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985).

In this case, it is clear that Officer Collardey had a reasonably articulable and

---

**2.** Cook was not working in conjunction with Officer Collardey that day; his presence was merely fortuitous and in a back-up role.

objectively verifiable reason for stopping defendant's car. Officer Collardey testified that he stopped the vehicle because of its blatant equipment violations and its excessive speed. After reviewing government exhibits 1 and 2 (photos of the defendant's car), the Court is firmly convinced that the equipment violations would have appeared obvious to any law enforcement officer occupying Officer Collardey's vantage point (i.e. on the median of I-475). Furthermore, there was no evidence adduced at the hearing to rebut the testimony that defendant's car was travelling at an unlawful speed.

Defendant argues that Officer Collardey's actions were pretextual. Defendant points to Officer Collardey's testimony that the occupants of the car fit a profile of young black males from Detroit who are typically fruitful sources of drugs. Defendant's argument fails both factually and legally.

The Court's own questioning at the suppression hearing supports the conclusion that Officer Collardey's conduct was not motivated by racial considerations. At the close of defendant's re-direct examination of Officer Collardey, the Court asked Officer Collardey why he stopped defendant's automobile. In response, Officer Collardey stated that the equipment and traffic violations prompted him to stop the vehicle. After reviewing the stenographic tapes of the suppression hearing and its notes, the Court concludes that Officer Collardey's off-hand remarks about a "profile" represent nothing more than his own general empirical observations noted after the fact. Thus, as a matter of fact, the Court concludes that Officer Collardey's actions were not infected by unconstitutional considerations of race or ethnicity.

■ Moreover, Officer Collardey's subjective state of mind at the time of the stop is legally inconsequential if there was an objectively valid reason to stop the automobile. *U.S. v. Crotinger,* 928 F.2d 203 (6th Cir.1991). Under *Crotinger,* Officer Collardey's subjective motivations do not inval-idate the stop and resulting search of defendant's automobile because his actions were objectively justified. As noted above, defendant's car presented obvious equipment violations and was travelling at an unlawful speed, posing a threat to both the occupants of the car and other motorists. Presented with identical facts, a reasonable law enforcement officer would have acted similarly. Accordingly, as a matter of law, the Court concludes that Officer Collardey's subjective state of mind, whatever it may have been, does not justify suppression.[3]

### B.

Having determined that Officer Collardey lawfully stopped defendant's vehicle, the Court turns it attention to the issue of whether Officer Collardey lawfully conducted a warrantless search of defendant's vehicle. Warrantless searches are *per se* unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. *California v. Acevedo,* — U.S. —, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (citations omitted). Two such exceptions are relevant here: the automobile exception and the inventory exception.

■ The "automobile exception" provides that police may search an automobile and the containers within it without a warrant when they have probable cause to believe that contraband or evidence is contained. *Acevedo,* 111 S.Ct. at 1991. This exception exists regardless of whether law enforcement officials have probable cause to believe that contraband exists within the automobile generally, or whether they have probable cause to believe that contraband is contained within a specific and identifiable container placed somewhere within the vehicle. *Id.*

■ A warrantless inventory search of a vehicle is constitutionally permissible when it is performed according to standard police policy, not undertaken in bad faith, and not for the purpose of uncovering evidence of

---

**3.** The decision in *U.S. v. Perez,* 936 F.2d 574 (6th Cir.1991), also supports the Court's conclusion regarding the legal significance of Officer Collardey's state of mind.

criminality. *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Inventory searches serve three purposes: to protect owner's property while vehicle is in police custody, to protect police against claims of theft and vandalism, and to protect police against possible dangers. *Id.* at 369, 96 S.Ct. at 3097.

In the instant case, under the automobile exception, Officer Collardey had probable cause to search the entire vehicle when he found a rock of crack cocaine during the pat down search of the driver, Hodges. The detection of the crack cocaine in addition to the false information regarding ownership of the car and the lack of proper identification gave Officer Collardey probable cause to believe that contraband was contained in the car. Thus, under the automobile exception, Officer Collardey's search of defendant's vehicle was constitutionally permissible.

Likewise, under the inventory exception, Officer Collardey lawfully searched defendant's auto. According to established Grand Blanc Township police procedures, Officer Collardey impounded defendant's vehicle after the driver, Hodges, was arrested and there was no licensed occupant to attend to the vehicle. There was no evidence adduced at the hearing to suggest that Officer Collardey's inventory search was a "fishing expedition." And there was no evidence introduced indicating that Officer Collardey conducted the inventory search for the purpose of uncovering evidence of criminality—especially since he had already uncovered evidence of criminal conduct and had arrested Hodges, the driver.

### III.

Having presided over the suppression hearing and after reviewing the motion, briefs and file, the Court concludes that the government's conduct in searching defendant's automobile and in obtaining defendant's statements was constitutionally val-

id. Therefore, defendant's motion to suppress is DENIED.

IT IS SO ORDERED.